IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TONYA R. THOMPSON,                                    Civil No. 09-6136-AA
                                                      OPINION AND ORDER
       Plaintiff,

  vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
_____

Kathryn Tassinari
Brent Wells
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401
    Attorneys for plaintiff

Dwight Holton
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204-2902

Leisa A. Wolf
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901

1   - OPINION AND ORDER

Seattle, Washington 98104-7075
    Attorneys for defendant

AIKEN, Chief Judge:

Claimant, Tonya Thompson, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. §§ 405(g), for disability insurance benefits under Title II of the Act, and for Supplemental Security Income (SSI) disability benefits under Title XVI of the Act, 42 U.S.C § 1383(c)(3). Claimant requests judicial review of a final decision of the Commissioner denying her application for disability insurance benefits and for SSI disability benefits. For the reasons set forth below, the Commissioner's decision is reversed and remanded for payment of benefits.

## PROCEDURAL BACKGROUND

In August 2006, plaintiff protectively filed concurrent applications for disability insurance benefits and SSI disability benefits. Tr. 117-122. She alleged disability beginning January 18, 2006, due to psoriasis, fibromyalgia, and mental impairments. Tr. 11-2, 117.

After the Commissioner denied her applications initially and on reconsideration, plaintiff requested a hearing before an administrative law judge (ALJ). That hearing occurred on December 2, 2008. Tr. 21-66. On January 23, 2009, the ALJ issued a decision finding plaintiff not disabled and indicating that she could perform other work existing in the economy. Tr. 6-20. On March 20, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Tr. 1-3. The Appeals Council's denial of review made the ALJ's decision the

2    - OPINION AND ORDER

Commissioner's final decision. 20 C.F.R. §§ 404.981, 416.1481, 422.210.

Plaintiff then filed a complaint before this court. The relevant period for review begins January 18, 2006 (plaintiff's alleged disability onset date) to January 23, 2009 (date of ALJ's decision).

**STANDARD OF REVIEW**

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. Bowen v.

3 - OPINION AND ORDER

Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e)-(g), 416.920(e)-(g). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

4    - OPINION AND ORDER

**DISCUSSION**

At the time of the hearing, plaintiff was 38 years old. Tr. 26. She dropped out of high school in tenth grade. Id. She worked as a caregiver for elderly people and a housekeeper at World Mart. Tr. 28-29. Plaintiff last worked in January 2006. Tr. 28.

The ALJ found that plaintiff had the residual functional capacity to perform light level work; to lift and carry 20 pounds occasionally and 10 pounds frequently; to stand, walk and sit for six hours each over an eight-hour period; to never climb ladders, ropes or scaffolds; to only occasionally climb stairs/ramps, balance, stoop, kneel, crouch or crawl; to only occasionally perform overhead work; and to frequently grip/grasp with both hands or perform any finger activity. Tr. 14. The ALJ found that plaintiff needed a sit/stand option and was limited to the performance of one to three step tasks. Id. The ALJ rejected the opinions of Drs. May and Slatick. Tr. 15. The ALJ concluded that plaintiff was not able to perform her past work, but retained the ability to work as a box filler, warehouse checker or garment sorter. Tr. 18-19.

Plaintiff has a history of psoriasis, back pain and mental illness, dating prior to her onset date. Tr. 206, 234-35, 242, 329. Plaintiff occasionally had to seek emergency treatment for her psoriasis. Tr. 257, 263-64, 267. On July 21, 2005, plaintiff was examined by Dr. S. Jon Denton, a dermatologist. Tr. 211. Plaintiff reported that she had had psoriasis for the past 21 years and it was worsening over time. Id. Dr. Denton diagnosed psoriasis and probable psoriatic arthritis. Id.

5   - OPINION AND ORDER

Plaintiff was referred to a rheumatologist for injectable treatment. Tr. 222-23.

In September 2005, plaintiff was examined by Dr. Charles May, a rheumatologist, who recommended Remicade infusions. Tr. 281. Over the course of the next several months, Dr. May increased plaintiff's Remicade dose ultimately up to 800 mg per infusion, an amount he described as a "fairly high dose." Tr. 274. Dr. May noted that both plaintiff's cutaneous psoriasis and psoriatic arthritis were chronic conditions that would require treatment indefinitely. Tr. 273. Dr. May noted that he had to treat plaintiff "fairly aggressively," and had to increase the Remicade dosage and frequency of her infusions in an attempt to control her disease. Id.

On December 16, 2006, plaintiff was examined by an agency physician, Dr. Minhau Zhou, an internal medicine specialist. Tr. 356. Dr. Zhou stated plaintiff could stand or walk for six hours in an eight-hour day, and sit without restriction. Tr. 359. Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently. Tr. 360. She could only occasionally bend, stoop or crouch due to her back symptoms. Id. Dr. Zhou found that plaintiff had "occasional manipulative limitations on reaching, handling, grasping, and feeling due to the arthritis in her hands." Id.

On December 22, 2006, plaintiff was examined by Dr. Rory Richardson, a licensed psychologist. Tr. 365. Dr. Richardson noted that he had previously examined plaintiff in August 2003, at which time her Full Scale IQ was 80, with Verbal IQ at 88, and Performance IQ at 75. Id. Her Working Memory was in the

6   - OPINION AND ORDER

borderline range, and her arithmetic ability was at the 3rd grade level. Id. Dr. Richardson diagnosed plaintiff with Bipolar Disorder NOS; Anxiety Disorder NOS; Pain Disorder with both Psychological Factors and General medical Condition; Polysubstance Dependence reportedly in remission; and Borderline Personality Disorder. Id.

In May 2007, Dr. May completed a Medical Release form indicating that plaintiff could not participate in any job-related activities because they would aggravate her psoriatic arthritis and fibromyalgia. Tr. 421. He then wrote a separate letter stating that plaintiff would not work a 40-hour week because it would aggravate both her psoriatic arthritis and her fibromyalgia. Tr. 426.

On August 8, 2007, Dr. May increased plaintiff's Remicade dosage to 900 mg per infusion. It was the highest dosage he had ever used on a patient. Tr. 425.

In November 2007, Dr. May wrote a letter stating that plaintiff was "not employable" due to her psoriasis and psoriatic arthritis, and that those conditions "are expected and will require treatment indefinitely." Tr. 423.

On March 6, 2008, Dr. May examined plaintiff and concluded that her symptoms were "most consistent" with fibromyalgia. Tr. 449. Dr. May prescribed Tizanidine, which decreased her muscle spasms, but left her with continued back and neck pain. Tr. 472. In July 2008, Dr. May advised plaintiff that he could not increase her Remicade dosage despite reoccurring and worsening psoriasis. Tr. 467. Plaintiff's treating Nurse Practitioner, Meg Portwood, also wrote a letter stating that plaintiff was

7 - OPINION AND ORDER

unable to work "due to chronic health issues" including psoriasis, psoriatic arthritis, fibromyalgia, and bipolar disorder. Tr. 461. Plaintiff's physical therapist also concluded that plaintiff was unable to work. Tr. 471.

In September 2008, Dr. May signed a letter indicating that he had been treating plaintiff's conditions very aggressively with a high dose of Remicade, however, despite this aggressive treatment, plaintiff had active inflammatory arthritis and continued to develop skin lesions. Tr. 458. Dr. May opined that plaintiff would be unable to work 40 hours per week without further aggravating her inflammatory arthritis. Id.

In November 2008, plaintiff was examined by Dr. Emil Slatick, a licensed psychologist. Tr. 491. Testing revealed that plaintiff's Full Scale IQ and Performance IQ fell within the borderline range. Tr. 496. Her intellectual functioning fell within the 6th percentile with scores predictive of struggles in academic, training and employment endeavors. Id. Dr. Slatick noted that validity scales indicated that plaintiff was generally honest and forthright when responding to items on the MMPI-2. Id. Dr. Slatick diagnosed plaintiff with Pain Disorder; Anxiety Disorder NOS; Depressive Disorder NOS; Polysubstance Disorder in sustained full remission; Borderline Intellectual Functioning; and Personality Disorder NOS with Borderline Features. Tr. 497. He assigned plaintiff a GAP of 38. Dr. Slatick wrote:

> The data collected during the course of this evaluation indicated that [plaintiff] is experiencing difficulties in both emotional and behavioral functioning of a nature and severity sufficient to exert a significant negative impact across domains of functioning.... [Plaintiff's] psychological and physical difficulties are

8   - OPINION AND ORDER

>     longstanding and unlikely to remit in the
>     foreseeable future without a high level of
>     intervention.

Id.

Dr. Slatick concluded that plaintiff was unlikely to be successful in employment endeavors at that time. Tr. 498.

On November 28, 2008, Dr. Slatick completed a Rating of Impairment Severity Report indicating that plaintiff had moderate restrictions in her activities of daily living, marked restrictions in social functioning and in concentration, persistence and pace. Tr. 489. Dr. Slatick stated that plaintiff had four or more episodes of decompensation due to increases in pain and emotional distress. Tr. 490. On November 29, 2008, Dr. Slatick completed a mental residual functional capacity form indicating that plaintiff was markedly limited in her ability to remember locations and procedures, to understand and remember detailed instructions, to maintain attention and concentration, to sustain an ordinary routine, to work in coordination with or proximity to others, to complete a normal workday and workweek, to interact with the general public, to accept instructions and respond to criticism, to get along with coworkers, to maintain socially appropriate behavior, and to set realistic goals. Tr. 499-500.

The Vocational Expert (VE) testified that when a hypothetical person required a half hour break every other day above and beyond the normal break schedule, that condition would not be acceptable most employers. Tr. 63. The VE further testified that most employers would not tolerate one to two absences a month on a regular basis. Id. The VE was then asked

9   - OPINION AND ORDER

to consider an additional limitation, that is, no more than the occasional use of hands for either fine or gross manipulation. Tr. 64. The VE testified that such a limitation would be a "barrier" for the jobs she had initially listed. Id.

I find that the ALJ erred in rejecting the opinions of Drs. May and Slatick. Dr. Slatick's opinion is not contradicted by a treating or examining doctor; therefore, the ALJ was required to give clear and convincing reasons for rejecting his opinion. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). The ALJ's reasons fail to meet this standard. I find no indication that Dr. Slatick based his opinion of plaintiff's mental limitations on anything other than the results of intellectual and personality testing that he administered, as well as a clinical interview he conducted with plaintiff. Tr. 495-96. Next, regarding Dr. Slatick's GAF score of 38, indicating a "major impairment," that is consistent with his diagnosis and conclusion that plaintiff's emotional and behavioral difficulties were of "a nature and severity sufficient to exert a significant negative impact across domains of functioning." Tr. 497. I find the ALJ failed to provide clear and convincing reasons for rejecting Dr. Slatick's opinion, and therefore his opinion will be credited.

Similarly, I find the ALJ erred in rejecting the opinion of plaintiff's treating physician, Dr. May. As a treating doctor, his opinion is entitled to controlling weight. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). The ALJ must provide "clear and convincing" reasons for rejecting a treating doctor's uncontradicted medical opinion. Id. Further, Dr. May's

10   - OPINION AND ORDER

opinion should be given additional weight as a rheumatologist and specialist in the medical conditions from which plaintiff suffers. Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004). The ALJ relied primarily on the opinion of a examining doctor for the agency, Dr. Zhou. Tr. 15. Dr. Zhou examined plaintiff on one occasion for a total of 19 minutes. Tr. 356. According to the record, Dr. Zhou is an internal medicine doctor, and not a rheumatologist. Dr. Zhou did not make any findings that conflicted with Dr. May's, and specifically found that plaintiff did, in fact, suffer from psoriasis and psoriatic arthritis. The ALJ then found that Dr. May's objectivity was questionable and his conclusions were simply advocacy upon plaintiff's behalf. Tr. 15. I find no basis in the record for this conclusion, nor does the ALJ point to any evidence in support. Therefore, Dr. May's opinion, as plaintiff's treating rheumatologist, will be credited and given controlling weight.

When crediting the opinions of both Drs. Slatick and May, the sequential analysis ends at Step Two with a finding of disability.

## CONCLUSION

The Commissioner's decision is not based on substantial evidence. Therefore, this case is reversed and remanded for payment of benefits. This case is dismissed.

IT IS SO ORDERED.

Dated this 17 day of June 2010.

11 - OPINION AND ORDER

_____
Ann Aiken
United States District Judge

12 - OPINION AND ORDER